Good morning. Good morning, your honors. May it please the court, my name is Jamie Drozd-Allen and I represent the appellant HUUUGE, Inc. in this matter. I'd like to reserve two minutes for rebuttal. The issue before the court is one of assent and whether Mr. Wilson, a plaintiff and a putative class action, assented to HUUUGE's terms of use, which indisputably require arbitration and bar his putative class action. Whether or not the court ultimately agrees that Mr. Wilson was on constructive notice, the court should vacate the district court's order because the district court erred by denying HUUUGE's motion without ordering discovery into Mr. Wilson's knowledge about HUUUGE's terms. The standard of review for failing to order this discovery is de novo. HUUUGE plainly put this at issue at ER 28 in its reply brief, amongst other places. HUUUGE pointed out that Mr. Wilson never stated that he didn't see the notice. He didn't that he didn't tap the three-button menu inside the app that by his own admission he repeatedly used and that he never otherwise saw or read the terms. Let's talk about this evidentiary issue. Do you agree that it's your burden to present the evidence on actual notice? I do agree that it's our burden to present either specific evidence or circumstantial evidence, Your Honor. So you knew at the outset that that's your burden, correct? Understood, yes. And the only, where does that come up other than that one-line footnote in that reply to a motion to compel that you even want more evidence on this? It seems pretty opaque. I mean, why wasn't there affirmative discovery on that point? Your Honor, I think that that's just the point, is that there should be affirmative discovery. HUUUGE set forth its motion that Mr. Wilson would have been on constructive notice and that he would have known and that he would have known in its moving brief at ER, in its initial brief at ER 69, ER 72 to 73, and ER 74. HUUUGE sets forth that Mr. Wilson proceeded to play HUUUGE's games for a year. I'm trying to understand the procedural aspect, because normally, if I'm a party and I have the burden of proving something and I don't have that evidence in my pocket, then I basically issue a discovery request or ask to stay proceeding so I can get this discovery so I can respond. But none of that seemed to happen here. That's right, that HUUUGE didn't, because HUUUGE relied, HUUUGE relied on asserting that he would have known by his, by his repeated use. It asserted that his repeated use, which he had already admitted to in his complaint, that's at ER, that's at ER 88. Right. But paragraphs 30 and 31. Did you ask the district court for additional discovery? We did in our reply brief. And that is — Reply brief in what? On our motion to compel arbitration. In a footnote. Well, I mean, it's a — That seems a little late. It seems late in the game to — You filed the motion to compel, asked the district court to do it. By the time you get to the reply brief, you said, well, maybe we really need discovery. Your Honor, I don't think — I think to be clear, what HUUUGE did was HUUUGE said — HUUUGE said Mr. Wilson would have been on notice, right? And what Mr. Wilson responded with was an alternative pathway in which he could have acquired the app. What he didn't address was the repeated use issue in terms of his repeated use and never seeing the three-button menu button, which plainly had terms and policy. And so when he didn't do that in his reply brief — and to be fair, it's not only in a footnote. There's a paragraph that discusses exactly that Mr. Wilson never — the three points I just said I don't want to repeat myself. I guess it's just that if you're going to launch this motion to compel and you've got this, you can't just rely on your allegations if you have the burden. So it seems like, you know, you go through all this and it looks like things aren't going so well and now all of a sudden you want discovery. So we have to look at that on abuse of discretion, don't we? No. The case with case Ninth Circuit 2018 where the court remanded for discovery on personal jurisdiction discussed that the standard is de novo when the court denies the request to authorize discovery. I also want to draw your attention to a very similar case which we cited, which is the Doe v. Zyteks case, 2016 Northern District of California case, where the court there held that constructive notice was not established, but that the agreement may yet possibly be enforceable if the plaintiffs had actual knowledge. But the only evidence put forth in the Doe case was an attorney declaration which stated that the plaintiff didn't have knowledge. We don't even have that here. Plaintiff didn't put forth any evidence for a lack of knowledge. And there, like here, Zyteks, in its reply brief, requested leave to conduct a discovery regarding the extent to which the plaintiff had actual notice. The Doe court, unlike our district court, ordered limited discovery, eight RFPs, and one four-hour deposition. This is also important if you look at other cases that have been cited throughout both parties' briefs on the need for a full record once the motion to compel arbitration is made. The now probably outdated Specks v. Netscape case had weeks of discovery. But, Counsel, did something change after Wilson filed his response to your motion to compel? Right. Mr. Wilson — something did change, Your Honor, because Mr. — What changed? What changed was Mr. Wilson didn't deny his knowledge. He didn't deny. He didn't make any — there are no — there is zero evidence on this record that Mr. Wilson, one, downloaded the app through this hypothetical way that a plaintiff's attorney's declaration submits, or two, never saw — never hit the menu button when he played, where he would have seen Terms and Policy with a little icon with a pen signing the Terms and Policy. There was no evidence that was submitted by Mr. Wilson. This is really contrary to what happens on all of the other records, where you look in the May v. Expedia case, the Meyer v. Uber case, the Alvarez v. T-Mobile case. In all of those, the plaintiff submitted a declaration. So can you only prevail today if you win on the discovery? Is that the only way you win? I don't think it is the only way I win. Now, the district court doesn't — says actual knowledge is not at issue here. So can you win outside of an actual knowledge argument? Yes, I think we can win outside of an actual knowledge — You're down to three minutes. You may want to push that argument, then. I'll push that argument. I do want to point — to the extent that the court is — that the court is interested in the footnote issue, though, I do want to point that there is authority that — that there's not waiver of an argument where it is in a footnote, and that the question really and the inquiry is whether or not it was sufficiently raised for the trial court to make a ruling on it. And at ER-7, the district court ruled on it. So I think that shows that that argument wasn't, in fact, waived between that and Zytec. I'm turning, though, Your Honor, to the constructive notice in my 48 seconds before I'm going to save for rebuttal. There are two ways in which Hughes has asserted that Mr. Wilson was on constructive notice. I'm going to go to the second one first, which is by his own admission at ER-84, paragraphs 30 and 31 — that's his complaint — he continued to use the app over and over again. And it would be — one would expect a reasonable smartphone user — that's the standard under Meyer. This court standard is a reasonable user — that he would have hit that menu button at some point during his play. Why? The menu — Why would — why would anybody want to — why would anybody who was — who was interested in playing a game on their phone want to hit the menu button? The menu button includes very important things. It lets him edit his profile, where he could put an avatar or a picture. It lets him adjust notifications. If he's playing at work, he does that all the time. It lets him adjust the sounds and the vibrations. There is no case — But the point is, it's a — you know, it's even a funny little menu button that goes dot, dot, dot. He can just keep playing without ever going there, right? He could, but there's zero evidence in the record that he did. And one would expect a reasonable smartphone user to look at that menu at some point during this repeated play that continued over a year. But why would that be the case? Because do you — let me ask you this. The representation of the game that we have in the video and in the various documents, do you dispute the accuracy of that? Do I dispute the accuracy of the video that was submitted? About, you know, the representation of what's on the website and how this thing works? No, I don't, Your Honor. And I will reserve the remainder of my minute. Thank you. Good morning, Your Honors. May it please the Court. My name is Roger Perlstadt, and I represent Plaintiff Appellee Sean Wilson. I think I'd like to start with this idea that Hugh is putting forward this morning, that Mr. Wilson somehow had this burden of coming forward with evidence about his actual experience, what they refer to in their briefs as the convenient non-denials. The only issue below was constructive notice. And therefore, what Mr. Wilson actually did or saw is irrelevant to constructive notice. Hugh made a constructive notice argument, so we responded with constructive notice evidence. They put forth evidence of screenshots. We put forth additional screenshots. We put forth the video to provide evidence of what a reasonable user would see. And in fact, denying actual knowledge wouldn't have been responsive to a constructive notice argument. If they established constructive notice, it's not a defense to say, well, we never saw it. It's still sufficient constructive notice whether or not he actually saw it. So our putting forward some evidence about what he actually did or actually saw would have been non-responsive to that. On a motion to compel arbitration, Hugh had the burden of establishing an agreement. We don't have a burden of establishing a lack of agreement. Hugh failed to meet its burden. And frankly, Hugh should design its app in a way that contract formation is clear if it wants to be able to enforce these contracts. It's not that hard. Lots of companies do it. There's some discussion about that in the prior argument about how that can be done. The Wynn case, which we had previously, says the onus is on the website owners to put the If you have a user who is a continuous player and has played multiple times, does it shift in terms of what's reasonable on the part of the consumer to actually take a look at these three dots, I'll call them? No. I don't think it does, Your Honor. And I think that's the takeaway from the repeated use cases. Repeated use doesn't affect the constructive use analysis. Bad notice doesn't become good notice through sheer repetition. So for example, in cases like register.com, repeated use mattered there because notice of terms of use and the binding nature of terms of use was presented only at the end of a transaction. So maybe a user could say, well, I never saw it on the first transaction. But every subsequent transaction, they were provided good notice at the end of a transaction, so they know for the next time. But in cases like Stark v. Square Trade, which also involved notice at the end of a transaction, it was bad notice at the end of a transaction. And the fact that it was bad notice at the end of a transaction, the fact that the user engaged in multiple transactions didn't change it. It was still bad notice. That case involved email receipts. And at the bottom of the email receipts, there was an inconspicuous hyperlink that just said terms of use in the bottom corner. And the court said that's not good enough. And the fact that the plaintiff in that case, in Stark v. Square Trade, had done five or six prior transactions and gotten five or six prior identical email receipts didn't change the inquiry. Bad notice was bad notice the first time, the second time, the sixth time. And it's bad notice here. It doesn't matter how often he plays. It's still bad notice. And that makes sense because repeated use doesn't tell us anything about constructive notice here. It's just pure speculation to say that repeated visits to the huge casino make a user more likely to click on that three-dot menu button. There's no evidence supporting that speculation. And to the contrary, as Judge Layton found, and I think Judge McEwen was pointing out today, visiting the menu isn't essential or even helpful for playing the game. And finally, a really important thing to keep in mind here is even if a reasonably prudent user were more likely or actually did click on that three-dot menu, that's still not enough. The three-dot menu terms of use is still not enough because there's no prompt there. There's a link that says terms of use, but that's it. There's no prompt saying that continuing to use this app manifests the user's assent to those terms of service. And WIN requires such a prompt. And that's important because the whole point of notice is that a user has to understand that their conduct is manifesting assent to terms. A user has to have notice of two things. They have to have notice of the existence of terms of service, but they also have to have notice of a method of assenting to those terms, that continuing to use or downloading an app or making a purchase. And that's not evident here at all. There's no prompt or notice here. And that's a key requirement of WIN. So going back to the discovery issue, one of the reasons the district court says that actual notice is not an issue is because there's no discovery on it and there's no evidence on it, although Hughe candidly admitted that it's burden. But of course, the evidence is in the domain. Why shouldn't there be sent back for discovery on that issue? Well, Hughe shouldn't get a second bite at the apple. They want to file another motion to compel based on actual knowledge, if you affirm. But as you know, they never argued actual knowledge below. They never sought discovery on it. If they thought they needed discovery on it, they should have asked for it. But instead, they asked for a stay of all discovery. And app owners shouldn't need discovery to determine whether a contract was formed. They shouldn't need our discovery. They have the burden. It's easy for them to make contract formation clear through browser app that conforms to WIN or ClickRap. And so I just, I don't think they should. No, I mean, what if it turns out that a very candid plaintiff says, oh yeah, I did take a look at that. So I wonder what those little three dots were. So I clicked. And then when I clicked, I got this other screen. And I was curious what that was. You could still make your argument, well, it's not sufficient notice for it to be binding. But what if it turns out that you had a very diligent plaintiff? How can they know that without discovery? It seems to me very hard to prove actual knowledge without some discovery of the plaintiff. I absolutely agree. Well, first, they could design it in different ways. In one of the, in Sultan v. Coinbase, the website owner had logs of what users clicked on and what the interface was. So they could design the app in such a way that they would know what users clicked on. Second of all, I agree. Absent that, which I think they should do, but absent that, yes, maybe they would need discovery to know whether he had actual notice, which again is why they should have asked for discovery if they wanted to make that argument. And finally, obviously it's not in the record, but I will tell you, I've spoken to Mr. Wilson and he's- We're not going to take what's not- We offered below to- We're not going to take what's not in the record. I will tell you discovery will be, will not reveal actual knowledge here. But if there's  Thank you. Thank you, Your Honor. Would you, we took, we gave you a lot of questions, so would you add another minute back to her rebuttal time? Thank you, Your Honor. I wanted to address briefly a couple of points, which was the question that you just asked Judge McKeown about, about how would HUGE have known. And counsel's response was that HUGE should have had data to know. Well, of course, Mr. Wilson's name is about as common as John Smith. And so, and so that shouldn't prejudice HUGE when making its motion to compel. And I want to make sure that we're not- I think that was his point. I don't, I think that there are algorithms and data collection matters that ways through IP addresses and other things that websites do use. I think that was his point. But if you can identify the user, and that user doesn't have a name that is very common. So that, that is one point. Well, they don't generally identify through name. They identify through IP address. Right. Well, which we, which again, leads back to the same road that HUGE would have needed discovery. I just want to hearken back to the idea, though, that it is not that HUGE didn't ask for discovery. And I know we have differing opinions on when it asked for discovery, but it did ask for discovery in its reply brief. It made clear in the paragraph to which the footnote is attached at ER 28 that Mr. Wilson's knowledge was important. And it did ask in the footnote, and the footnote, I will admit there are cases going both ways as to whether footnotes raise an issue or not. But at the heart of it, the Ninth Circuit's inquiry is whether that footnote is sufficient to make a ruling. And I think the evidence is that the District Court did make a ruling on it. So that, so evidently, HUGE did raise the issue below. And it was an error then for the District Court to not permit this discovery so that we have a full record on which to go by. And with that, I'll have nothing further. Thank you, Your Honors. Thank you. Thank you both for your arguments this morning. The case of Wilson v. HUGE is submitted.
judges: McKeown, Bybee, Gaitan